**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARY E. MAIER,
an individual,

Case No.:

Plaintiff,

v.

VYSTAR CREDIT UNION,
a Florida credit union,

Defendant.
______________________________________/

## COMPLAINT

**COMES NOW**, Plaintiff, MARY E. MAIER (hereinafter, "Plaintiff" or "Maier"), by and through the undersigned counsel, and hereby sues Defendant, VYSTAR CREDIT UNION (hereinafter, "Defendant" or "VyStar"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1. This is an action for all damages allowable under the Electronic Fund Transfer Act (hereinafter, "EFTA"), 15 U.S.C. § 1693, et seq., arising from Defendant VyStar Credit Union's denial of Plaintiff's valid claim of unauthorized electronic fund transfers, its failure to conduct a reasonable investigation of Plaintiff's disputes, its failure to provisionally credit Plaintiff's accounts for the full amount of the unauthorized transactions within the statutory period, its refusal to

provide the documents relied upon in denying Plaintiff's claim, and its complete failure to respond to Plaintiff's Second Notice of Error after confirmed delivery by certified mail. Between November 13 and November 20, 2025, one or more unknown persons obtained unauthorized access to Plaintiff's VyStar accounts through a scheme that included impersonating VyStar, and proceeded to drain approximately $42,000.00 from Plaintiff's checking, money market, and savings accounts through a coordinated series of ATM withdrawals, unauthorized retail purchases at multiple locations across Jacksonville and South Florida, and unauthorized transfers of Plaintiff's savings to an account not belonging to Plaintiff. VyStar denied Plaintiff's claim on the basis that Plaintiff surrendered her debit card and shared information, a legally insufficient rationale under the EFTA, without conducting a reasonable investigation and in disregard of its own internal records confirming unauthorized account access that preceded Plaintiff's interaction with the fraudsters.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as well as pursuant to the EFTA, 15 U.S.C. § 1693m(g), which expressly confers jurisdiction on the federal district courts.

3. Defendant is subject to the jurisdiction of this Court as VyStar Credit Union regularly transacts business within the Middle District of Florida, maintains

its principal place of business in Jacksonville, Florida, and the acts and transactions giving rise to Plaintiff's claims occurred within this District.

4. Venue is proper in this District and in the Jacksonville Division pursuant to 28 U.S.C. § 1391(b), as Plaintiff resides in Jacksonville, Duval County, Florida, and the acts and transactions described herein occurred within this District and Division.

## PARTIES

5. At all times material herein, Plaintiff MARY E. MAIER is a natural person residing in the City of Jacksonville, County of Duval, State of Florida, and is a "consumer" as defined by 15 U.S.C. § 1693a(6).

6. At all times material herein, Defendant VYSTAR CREDIT UNION is a credit union organized and existing under the laws of the State of Florida, with its principal place of business at 76 South Laura Street, Jacksonville, Florida 32202, and is insured by the National Credit Union Administration (NCUA). VyStar transacts business throughout Duval County and the Middle District of Florida, including through the branch locations at issue in this action.

7. At all times material herein, Defendant VyStar Credit Union is a "financial institution" within the meaning of 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i), as it held consumer asset accounts for Plaintiff and agreed to provide electronic fund transfer services in connection with those accounts.

8. At all times material herein, Defendant VyStar Credit Union acted through its agents, officers, servants, and employees, who at all relevant times were acting within the course and scope of their employment and with the actual or apparent authority of Defendant.

9. At all times material herein, Plaintiff maintained the following consumer asset accounts with Defendant, each established and used primarily for personal, family, or household purposes, constituting "accounts" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. § 1005.2(b): (a) Regular Checking Account ending in the digits 6952 (hereinafter, "Plaintiff's Checking Account"); (b) Money Market Savings Account ending in the digits 0030 (hereinafter, "Plaintiff's Money Market Account"); and (c) Primary Savings Account ending in the digits 0010 (hereinafter, "Plaintiff's Savings Account") (collectively, "Plaintiff's Accounts"). Defendant issued Plaintiff a debit card linked to Plaintiff's Checking Account, which constituted an "access device" as defined by 15 U.S.C. § 1693a(1) and 12 C.F.R. § 1005.2(a) (hereinafter, "Plaintiff's Debit Card").

**<u>EFTA STATUTORY STRUCTURE</u>**

10. The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).

11. Regulation E, 12 C.F.R. Part 1005, et seq., is the set of federal regulations promulgated by the Consumer Financial Protection Bureau that implements and carries out the purposes of the EFTA.

12. Under the EFTA, a "financial institution" must follow specific error resolution procedures upon a consumer's dispute of an "error," which expressly includes an unauthorized electronic fund transfer. 15 U.S.C. § 1693f(a). The error resolution procedures require a financial institution to investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. 15 U.S.C. § 1693f(a)(3); 12 C.F.R. § 1005.11(c)(1). If the financial institution is unable to complete its investigation within ten business days, it must provisionally credit the consumer's account for the full amount of the alleged error. 15 U.S.C. § 1693f(b); 12 C.F.R. § 1005.11(c)(2).

13. If a financial institution denies a consumer's error claim, it must notify the consumer in writing of its findings and, upon the consumer's written request, provide copies of the documents it relied upon in concluding that no error occurred. 15 U.S.C. § 1693f(d); 12 C.F.R. § 1005.11(d).

14. An "unauthorized electronic fund transfer" is defined as an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the

consumer receives no benefit. 12 C.F.R. § 1005.2(m). This definition expressly includes transfers where access was obtained through fraud or impersonation.

15. In an action under the EFTA, a prevailing consumer may recover actual damages, statutory damages of not less than $100.00 and not more than $1,000.00, costs, and reasonable attorneys' fees. 15 U.S.C. § 1693m(a)(1) through (3). Additionally, a court may award treble damages upon a finding that the financial institution "did not make a good faith investigation of the alleged error," "did not have a reasonable basis for believing that the consumer's account was not in error," or "knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available." 15 U.S.C. § 1693m(a)(2); 15 U.S.C. § 1693f(e).

## FACTUAL ALLEGATIONS

### Background: Plaintiff and Her Accounts

16. For a period of years prior to the events described herein, Plaintiff maintained Plaintiff's Accounts with VyStar for personal and household purposes, using them for routine transactions including payroll deposits from her employer, Bethlehem Lutheran Church and School, local retail purchases in Jacksonville, and regular bill payments.

17. Plaintiff's normal and established pattern of account usage was confined to Jacksonville, Florida and the surrounding area. Plaintiff did not

regularly make large purchases at electronics or gaming retailers, did not regularly make multiple purchases at the same retail chain across different store locations on the same day, and did not regularly travel to or make purchases in Fort Lauderdale, Broward County, Palm Beach County, or the surrounding areas.

**The Unauthorized Electronic Fund Transfers**

18. On the evening of November 13, 2025, Plaintiff received a telephone call from one or more unknown persons who identified themselves as representatives of VyStar Credit Union.

19. Before Plaintiff communicated any account information to these callers, they already possessed detailed knowledge of Plaintiff's account history, email address, and personal information, information that could only have been obtained through prior unauthorized access to Plaintiff's accounts.

20. On information and belief, and consistent with information subsequently provided to Plaintiff by a VyStar fraud investigator, one or more unknown persons obtained unauthorized access to Plaintiff's Accounts through VyStar's online banking system at approximately 1:06 p.m. on November 13, 2025, hours before the callers contacted Plaintiff, and changed Plaintiff's online banking password without her knowledge or authorization during or following that unauthorized access.

21. The callers, impersonating VyStar Credit Union, falsely represented to Plaintiff that her account had been compromised and that she must surrender her physical Debit Card for her own protection, claiming that a FedEx courier acting on VyStar's behalf would collect the card. Plaintiff, acting in good faith and believing she was complying with instructions from her own financial institution, surrendered Plaintiff's Debit Card to the person who arrived to collect it.

22. Plaintiff did not authorize any person to make withdrawals from Plaintiff's Accounts, purchase merchandise using funds from Plaintiff's Accounts, or transfer funds from Plaintiff's Accounts to any third party or unidentified account. Plaintiff received no benefit from any of the transactions described herein.

23. Beginning November 13, 2025 and continuing through November 20, 2025, one or more unknown persons used Plaintiff's Debit Card and their unauthorized access to Plaintiff's online banking to conduct the following unauthorized electronic fund transfers from Plaintiff's Accounts:

24. Unauthorized internal transfers from Plaintiff's Money Market Account (ending 0030) to Plaintiff's Checking Account (ending 6952), totaling $38,600.00, made in the following amounts and on the following dates: $5,000.00 on November 13, 2025; $6,000.00 on November 14, 2025; $4,000.00 on November 15, 2025; $6,000.00 on November 16, 2025; $5,800.00 on November 16, 2025; $5,950.00 on November 18, 2025; and $5,850.00 on November 18, 2025. These

internal transfers were made without Plaintiff's knowledge or authorization and were designed to fund the fraudulent purchases and withdrawals described below.

25. One unauthorized internal transfer of $4,000.00 from Plaintiff's Savings Account (ending 0010) to Plaintiff's Checking Account on November 19, 2025, made without Plaintiff's knowledge or authorization.

26. Eight unauthorized ATM cash withdrawals, consisting of: five withdrawals of $1,000.00 each at VyStar ATM locations in Jacksonville, Florida on November 13, 14, 15, 16, and 17, 2025; one withdrawal of $804.00 at a Bank of America ATM at the Las Olas location in Fort Lauderdale, Florida on November 18, 2025; one withdrawal of $204.00 at a Bank of America ATM at the Las Olas location in Fort Lauderdale, Florida on November 18, 2025; and one withdrawal of $1,004.00 at a Bank of America ATM at the Sistrunk location in Fort Lauderdale, Florida on November 19, 2025; totaling $8,012.00.

27. Unauthorized retail purchases at Best Buy, Target, Apple Store, and GameStop locations in Jacksonville, Florida between November 13 and November 17, 2025, totaling approximately $22,900.00, including but not limited to: a $1,665.16 purchase at Target (6331 Roosevelt Blvd.) on November 13; a $1,649.69 purchase at Best Buy in Daytona Beach and a $923.82 purchase at GameStop in Port Orange on November 14; a $1,665.18 Best Buy purchase, a $1,288.93 Apple

Store purchase, and a $1,666.23 Target purchase on November 15; a $1,665.18 Best Buy purchase, a $1,288.93 Apple Store purchase, and a $1,666.23 Target purchase on November 16; and multiple Best Buy and Target purchases totaling approximately $4,996.00 on November 17, 2025.

28. Unauthorized retail purchases at Best Buy, Apple Store, Target, Versace, and Burberry locations in Fort Lauderdale, Davie, Boca Raton, Sunrise, and Deerfield Beach, Florida on November 18 and 19, 2025, totaling approximately $10,800.00, including: a $1,760.92 Best Buy purchase and a $1,658.48 Target purchase in Fort Lauderdale; a $1,282.93 Apple Store purchase at the Las Olas location in Fort Lauderdale; a $170.00 Versace purchase and a $106.47 Burberry purchase in Sunrise; a $1,791.18 Best Buy purchase in Davie; a $1,710.93 Apple Store purchase in Boca Raton; and a $1,490.00 Target purchase in Deerfield Beach.

29. The geographic pattern of the unauthorized transactions is wholly inconsistent with Plaintiff's established account usage. On November 14, 2025, fraudulent purchases were made at GameStop locations in Port Orange and Melbourne Village, cities more than ninety miles from Jacksonville where Plaintiff resides. On November 18 and 19, 2025, the pattern shifted entirely to Broward and Palm Beach Counties, with ATM withdrawals and retail purchases at multiple locations in Fort Lauderdale, Davie, Sunrise, Boca Raton, and Deerfield Beach,

more than three hundred miles from Jacksonville. Plaintiff was in Jacksonville at all relevant times and did not travel to any of these locations.

30. On November 20, 2025, the unknown persons transferred $7,917.64 from Plaintiff's Checking Account to an account ending in the digits 6820, which is not one of Plaintiff's accounts with VyStar and whose owner is unknown to Plaintiff. This transfer cleared the remaining balance of Plaintiff's Checking Account to $0.00.

31. In the aggregate, the unauthorized electronic fund transfers described in paragraphs 23 through 30 caused Plaintiff actual damages of not less than approximately $42,000.00, consisting of funds wrongfully removed from Plaintiff's Money Market Account, Plaintiff's Savings Account, and Plaintiff's Checking Account, each of which constituted an unauthorized electronic fund transfer from a "consumer asset account" within the meaning of 12 C.F.R. § 1005.2(b).

32. None of the transactions described in paragraphs 23 through 30 were authorized by Plaintiff. Plaintiff received no benefit from any of the foregoing transactions.

33. The Jacksonville Sheriff's Office Economic Crimes Division has confirmed an open criminal investigation covering Plaintiff's case and at least twelve similar cases in Duval County, the majority of which involve VyStar accounts, and that suspects in the fraud scheme have been identified.

**Plaintiff's First Notice of Error**

34. On November 20, 2025, Plaintiff reported the unauthorized transactions to VyStar in person at VyStar's branch located on Beach Boulevard in Jacksonville, Florida, thereby providing Defendant with a notice of error within the meaning of 12 C.F.R. § 1005.11(b)(1) (hereinafter, "Plaintiff's First Notice of Error"). Plaintiff communicated to VyStar that she had not authorized the transactions and that funds had been wrongfully removed from her accounts.

35. On November 26, 2025, Plaintiff and her granddaughter visited VyStar's downtown Jacksonville branch in person to follow up on the dispute. Plaintiff met with VyStar branch manager Yasmine Walthour, who contacted VyStar's fraud department by telephone while Plaintiff was present.

36. During the November 26, 2025 meeting, branch manager Walthour reviewed Plaintiff's account records and stated to Plaintiff that she was "not pleased" with what she observed in the records. Branch manager Walthour confirmed to Plaintiff that the persons responsible for the fraud had access to Plaintiff's accounts before they ever contacted Plaintiff, and that VyStar's automated fraud alert system should have locked Plaintiff's accounts and failed to do so.

37. During the November 26, 2025 meeting, a VyStar representative communicated to Plaintiff that VyStar had determined it would not return the

disputed funds, on the basis that Plaintiff had surrendered her Debit Card and that account information had been provided to the fraudsters.

38. VyStar did not provide Plaintiff with a written denial letter setting forth the basis for its determination, as required by 12 C.F.R. § 1005.11(d)(1), at any point following its investigation.

39. Prior to the November 26, 2025 branch meeting, a VyStar employee at the Beach Boulevard branch had similarly informed Plaintiff that Plaintiff's accounts should have been locked when the fraud alert triggered and were not, a statement corroborated by branch manager Walthour on November 26, 2025.

**VyStar's Investigation and Denial**

40. On December 2, 2025, Plaintiff spoke by telephone with a VyStar fraud investigator who identified himself as Michael. The VyStar fraud investigator confirmed to Plaintiff the following: (a) VyStar's internal records showed that an unidentified device had accessed Plaintiff's accounts through VyStar's online banking system at approximately 1:06 p.m. on November 13, 2025, hours before Plaintiff received the fraudulent impersonation call that evening; (b) Plaintiff's online banking password was changed without her knowledge or authorization during or following that unauthorized session; (c) VyStar's security controls, which would otherwise have automatically locked Plaintiff's accounts upon detecting anomalous activity, had been deliberately disabled and not

applied to Plaintiff's accounts as a result of a business decision to avoid inconveniencing customers at the direction of VyStar's marketing department; and (d) the fraud scheme targeting Plaintiff had been occurring specifically across VyStar customers and was not an isolated or unique event.

41. Notwithstanding the information in VyStar's own possession, including its internal records of unauthorized account access at 1:06 p.m. on November 13, 2025, the unauthorized password change, the complete absence of device or geolocation data consistent with Plaintiff's normal usage, the geographic impossibility of Plaintiff's having made purchases simultaneously in Jacksonville and South Florida, and the systematic drain of Plaintiff's Money Market Account through seven large rapid transfers over seven days, VyStar denied Plaintiff's error claim on the sole basis that Plaintiff had surrendered her Debit Card and that account credentials were shared.

42. VyStar's investigation relied exclusively on the fact of authentication and did not evaluate whether the authenticated transactions were consistent with Plaintiff's established account usage, device and IP address data, geolocation data, the documented unauthorized account access that preceded Plaintiff's interaction with the fraudsters, or any other information that a reasonable investigation would require. See 12 C.F.R. § 1005.11(c)(4); CFPB EFTA FAQ (updated Dec. 13, 2021).

43. During Plaintiff's contacts with VyStar following the unauthorized transactions, Plaintiff specifically requested ATM surveillance photographs and other documentation relating to the unauthorized transactions. VyStar refused to provide any documents or records to Plaintiff. VyStar investigator Charlie declined to continue speaking with Plaintiff when a third party was present and refused to provide his employee identification or last name.

44. VyStar failed to provide Plaintiff with a written explanation of its denial identifying the specific documents and data it relied upon, as required by 12 C.F.R. § 1005.11(d)(1) through (2), at any point following the denial of Plaintiff's claim.

45. VyStar issued a provisional credit to Plaintiff's accounts in an amount less than the full amount of the unauthorized transactions. VyStar subsequently blocked Plaintiff's access to the provisional credit and restricted Plaintiff's account access, preventing Plaintiff from using the credited funds.

**Plaintiff's Second Notice of Error and Document Request**

46. In or about June 2026, Plaintiff transmitted to Defendant, by certified mail, return receipt requested, addressed to VyStar Credit Union, Fraud Department, P.O. Box 45085, Jacksonville, Florida 32232-5085, a formal Second Notice of Error pursuant to 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11 (hereinafter, "Plaintiff's Second Notice of Error"), identifying in detail each of the unauthorized

electronic fund transfers at issue, the specific deficiencies in VyStar's investigation, and the basis for Plaintiff's demand for correction.

47. On the same date and by the same means, Plaintiff transmitted to Defendant a formal written request for all documents and information VyStar had relied upon in denying Plaintiff's error claim, pursuant to 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d)(2) (hereinafter, "Plaintiff's Document Request").

48. Defendant received Plaintiff's Second Notice of Error and Plaintiff's Document Request. Plaintiff possesses certified mail return receipt confirmation establishing delivery of both documents.

49. Defendant failed to acknowledge, investigate, or respond to Plaintiff's Second Notice of Error within ten business days of confirmed delivery, and failed to provisionally credit Plaintiff's accounts for the full amount of the disputed transactions within that period. Defendant has not provided any written response to Plaintiff's Second Notice of Error or Plaintiff's Document Request at any time.

50. Following VyStar's failure to respond, Plaintiff visited VyStar's downtown Jacksonville branch in person. VyStar branch personnel confirmed to Plaintiff that VyStar had no record of Plaintiff's Second Notice of Error or Plaintiff's Document Request, notwithstanding confirmed delivery by certified mail.

51. At no time following its receipt of Plaintiff's Second Notice of Error has VyStar conducted any investigation, issued any provisional credit for the full disputed amount, provided any written results, or provided any of the documents Plaintiff requested.

**Plaintiff's Resulting Damages**

52. As a direct and proximate result of the unauthorized electronic fund transfers described herein and VyStar's violations of the EFTA, Plaintiff has suffered actual damages of not less than approximately $42,000.00, representing the full amount wrongfully removed from Plaintiff's Accounts, which amount is subject to final confirmation upon Defendant's production of complete account and transaction records.

53. In addition to the loss of account funds, Plaintiff has suffered consequential damages including, without limitation, fees and charges assessed in connection with the unauthorized transactions; losses attributable to VyStar's restriction of Plaintiff's account access; and the loss of use of Plaintiff's funds throughout the period during which VyStar has wrongfully refused to correct the error.

54. VyStar's denial of Plaintiff's error claim was not the product of a good faith investigation. VyStar's own internal records confirmed unauthorized account access preceding Plaintiff's interaction with the fraudsters. VyStar's fraud

investigator acknowledged that VyStar's security controls had been deliberately disabled for marketing reasons and that the fraud scheme was known to VyStar as systemic. VyStar refused to evaluate device, IP address, or geolocation data. VyStar refused to provide the documents it relied upon. VyStar had no record of Plaintiff's Second Notice of Error despite confirmed certified mail delivery. These facts collectively establish that VyStar knowingly and willfully concluded no error occurred without a reasonable basis for that conclusion and failed to conduct a good faith investigation within the meaning of 15 U.S.C. § 1693m(a)(2) and 15 U.S.C. § 1693f(e).

## COUNT I

### VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT
### ERRONEOUS DENIAL OF PLAINTIFF'S ERROR CLAIM
### 15 U.S.C. § 1693f(e)

55. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. Plaintiff provided Defendant with a notice of error on or about November 20, 2025, identifying the unauthorized electronic fund transfers from Plaintiff's Accounts.

57. Each of the transactions described in paragraphs 23 through 30 constituted an "unauthorized electronic fund transfer" within the meaning of 15

U.S.C. § 1693a(12) and 12 C.F.R. § 1005.2(m), as each was initiated by a person other than Plaintiff without actual authority and from which Plaintiff received no benefit. The CFPB has expressly confirmed that transfers resulting from a fraudster's impersonation of a financial institution and the resulting surrender of account access constitute unauthorized electronic fund transfers under Regulation E. CFPB EFTA FAQ (updated June 4, 2021).

58. Defendant erroneously concluded that no error occurred. Defendant's basis for denial, that Plaintiff surrendered her Debit Card and that account credentials were shared with the fraudsters, is legally insufficient under the EFTA and Regulation E in light of the facts set forth herein. Defendant failed to correct the error following its erroneous determination.

59. As a direct and proximate result of Defendant's violations as aforesaid, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a), including actual damages, statutory damages, treble damages, costs, and attorneys' fees.

## COUNT II

### VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT FAILURE TO PROVISIONALLY CREDIT PLAINTIFF'S ACCOUNTS 15 U.S.C. § 1693f(b); 12 C.F.R. § 1005.11(c)(2)

60. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

61. Under 15 U.S.C. § 1693f(b) and 12 C.F.R. § 1005.11(c)(2), if a financial institution is unable to complete its investigation of an alleged error within ten business days of receiving a notice of error, it must provisionally credit the consumer's account for the full amount of the alleged error.

62. Plaintiff provided Defendant with Plaintiff's First Notice of Error on or about November 20, 2025. The ten-business-day period during which Defendant was required to either complete a reasonable investigation or provisionally credit Plaintiff's Accounts for the full disputed amount expired on or about December 5, 2025.

63. Defendant failed to provisionally credit Plaintiff's Accounts for the full amount of the disputed unauthorized transactions within ten business days of Plaintiff's First Notice of Error. Although Defendant issued a partial provisional credit, it did not credit the full amount of the disputed unauthorized transfers, in violation of 15 U.S.C. § 1693f(b) and 12 C.F.R. § 1005.11(c)(2). Defendant subsequently blocked Plaintiff's access to the partial provisional credit.

64. As a direct and proximate result of Defendant's violations as aforesaid, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

## COUNT III

## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT FAILURE TO CONDUCT A REASONABLE INVESTIGATION 15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.11(c)

65. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

66. Under 15 U.S.C. § 1693f(a) and 12 C.F.R. § 1005.11(c), Defendant was required to investigate Plaintiff's First Notice of Error promptly, in good faith, and consistent with its obligations to evaluate all available information bearing on whether the disputed transactions were authorized.

67. Defendant's investigation was neither reasonable nor conducted in good faith. Defendant denied Plaintiff's claim based solely on the fact of authentication, without evaluating: (a) the unauthorized account access documented in VyStar's own internal records occurring at 1:06 p.m. on November 13, 2025, before Plaintiff interacted with the fraudsters; (b) the unauthorized password change; (c) device identifier, IP address, and geolocation data for the fraudulent transactions; (d) the geographic impossibility of the transaction pattern relative to Plaintiff's established usage and residence; (e) the anomalous pattern of repeated identical-amount purchases at the same retail chains across multiple store locations on the same day; or (f) the rapid systematic drain of Plaintiff's Money Market Account through seven large internal transfers over seven days.

68. VyStar's own fraud investigator acknowledged to Plaintiff that VyStar's security controls, which would have detected and blocked the unauthorized access, had been deliberately disabled for marketing reasons, and that the fraud scheme was known to VyStar as an ongoing systemic problem affecting its customers. VyStar's denial was not supported by a good faith investigation of the evidence available to it.

69. As a direct and proximate result of Defendant's violations as aforesaid, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

**COUNT IV**

**VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT**
**FAILURE TO PROVIDE RELIED-UPON DOCUMENTS**
**15 U.S.C. § 1693f(d); 12 C.F.R. § 1005.11(d)(2)**

70. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

71. Under 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d)(2), following a denial of a consumer's error claim, a financial institution is required, upon the consumer's request, to promptly provide copies of the documents it relied upon in concluding that no error occurred.

72. Plaintiff requested the documentation VyStar relied upon in denying her claim during her contacts with VyStar in November and December 2025.

Defendant refused to provide any documentation, including ATM surveillance photographs specifically requested by Plaintiff. Plaintiff formally renewed this request in Plaintiff's Document Request transmitted by certified mail in June 2026, which Defendant received and failed entirely to answer.

73. Defendant's failure to provide the documents it relied upon in denying Plaintiff's claim, despite Plaintiff's timely and repeated requests, constitutes a separate and independent violation of the EFTA and Regulation E.

74. As a direct and proximate result of Defendant's violations as aforesaid, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

## COUNT V

### VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT FAILURE TO INVESTIGATE PLAINTIFF'S SECOND NOTICE OF ERROR 15 U.S.C. § 1693f; 12 C.F.R. § 1005.11

75. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

76. Plaintiff's Second Notice of Error, transmitted by certified mail and confirmed delivered to Defendant in June 2026, constituted a new, independent notice of error within the meaning of 12 C.F.R. § 1005.11(b)(1), triggering Defendant's full investigation obligations, including the obligation to investigate within ten business days or provisionally credit the full disputed amount, report

results in writing within three business days of completing its investigation, and provide the documents relied upon upon Plaintiff's request.

77. Defendant wholly failed to: (a) conduct any investigation of Plaintiff's Second Notice of Error; (b) provisionally credit Plaintiff's Accounts for the full disputed amount within ten business days of delivery; (c) provide any written response or notice of findings to Plaintiff; or (d) provide any of the documents requested in Plaintiff's Document Request. Defendant had no record of either document notwithstanding their confirmed delivery by certified mail.

78. Defendant's failure to investigate and respond to Plaintiff's Second Notice of Error constitutes a separate and independent violation of the EFTA and Regulation E, giving rise to its own violation dates and its own one-year limitations periods under 15 U.S.C. § 1693m(g).

79. As a direct and proximate result of Defendant's violations as aforesaid, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

## PRAYER FOR RELIEF

WHEREFORE, as a direct and proximate result of Defendant's conduct, Plaintiff MARY E. MAIER respectfully requests that the Court enter judgment in her favor and against Defendant VYSTAR CREDIT UNION and:

a. Award Plaintiff all actual compensatory damages suffered, including the full amount of the unauthorized transfers and all consequential damages, pursuant to 15 U.S.C. § 1693m(a)(1);

b. Award Plaintiff treble damages in an amount up to three times her actual damages, pursuant to 15 U.S.C. § 1693m(a)(2) and 15 U.S.C. § 1693f(e), in light of Defendant's failure to conduct a good faith investigation, its lack of a reasonable basis for its denial, and its knowing and willful conclusion that no error occurred;

c. Award Plaintiff statutory damages of not less than $100.00 and not more than $1,000.00 per action, pursuant to 15 U.S.C. § 1693m(a)(1);

d. Award Plaintiff the costs of this action and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1693m(a)(3); and

e. Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff MARY E. MAIER hereby demands a trial by jury on all issues so triable.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Defendant VYSTAR CREDIT UNION is hereby placed on notice that Plaintiff demands the immediate preservation of all records, documents,

electronically stored information, and tangible items in Defendant's possession, custody, or control that relate in any way to the claims asserted in this Complaint or to Plaintiff's accounts. This includes without limitation: all electronic fund transfer records and authorization logs; device login, IP address, and geolocation records; one-time passcode delivery and validation records; ATM surveillance photographs and video footage; fraud alert and fraud monitoring records; internal investigation files, case notes, and account notes; call recordings and chat transcripts; internal communications and emails; and all records relating to the account ending in 6820 to which Plaintiff's funds were transferred on November 20, 2025. Destruction, alteration, overwriting, or loss of any such records following the filing of this Complaint may result in sanctions, including adverse inference instructions.

Respectfully submitted,

**STORY LAW GROUP**
*/s/ Max Story*
**Max Story**
Florida Bar No.: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
max@storylawgroup.com
*Counsel for Plaintiff*